UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GEORGE MCLEAN,                  :    Civ. Action No. 05-5957(NLH)
                                :
        Plaintiff,              :
                                :
    v.                          :    **OPINION**
                                :
OLD DOMINION                    :
FREIGHT LINE, INC.,             :
                                :
        Defendant.              :

**APPEARANCES:**

Jill L. Teague, Esquire
Law Offices of Thomas T. Booth, Jr., LLC
41 South Haddon Avenue
Suite 5
Haddonfield, NJ 08033

    *Attorney for Plaintiff*

Jay Barry Harris, Esquire
Fineman, Krekstein & Harris
1608 Walnut Street
19th Floor
Philadelphia, PA 19103

    *Attorney for Defendant*

**HILLMAN, District Judge**

This matter has come before the Court on Defendant's motion for summary judgment on Plaintiff's claim pursuant to 29 U.S.C. § 1132(a)(1)(b) of the Employee Retirement Security Act (ERISA) for the reinstatement of his long term disability benefits. For the reasons expressed below, Defendant's motion will be granted.

## BACKGROUND

Plaintiff, George McLean, was employed as a truck driver for Defendant, Old Dominion Freight Line, Inc., from 1989 until 1995, when he was diagnosed with carcinoma of the tongue and pharynx with metastasis to the neck. On November 13, 1995, Plaintiff filed a claim for long term disability (LTD) benefits through Defendant's employee benefit plan. Defendant was the plan sponsor and plan administrator for its LTD plan, which provided LTD benefits for twenty-four months if a claimant's illness prevented him from performing his regular occupation, and continued benefits thereafter if a claimant was unable to perform any gainful occupation.

On October 17, 2000, Plaintiff's benefits were discontinued, because an independent medical examination (IME) found that, with regard to his otolaryngology problems (tongue, pharynx and neck cancer), Plaintiff was not totally disabled and was able to perform some type of sedentary work. Plaintiff appealed that decision, and Defendant solicited a second IME with regard to Plaintiff's orthopedic complaints. (See R. at 101.) The IME found that Plaintiff was totally disabled due to his thoracic back pain and use of Tylenol with Codeine, finding that both would hinder his ability to drive to work and impair his performance at work. The medical examiner also opined that if Plaintiff was able to "get off the Tylenol with Codeine, he might

be able to obtain some gainful employment, but this is doubtful." (R. at 99.)  As a result, on June 6, 2001, Plaintiff's benefits were restored.

In December 2004, Plaintiff was informed that as of November 30, 2004, his benefits were again discontinued.  Defendant's review of Plaintiff's medical records from October 21, 2003 through November 4, 2004 revealed that although Plaintiff was receiving treatment for insulin dependant diabetes, orthostatic symptoms, hypertension, and thyroid problems, he was no longer being treated for cancer because he was now "disease-free."  (R. at 74.)  The letter informing Plaintiff of the discontinuation of his benefits stated that "[n]o other medical problems can be considered with" his file, and should he have any other medical problems that keep him from working, he should complete a new disability claim form.  (R. at 57.)

Plaintiff appealed, his treating physicians were each asked to complete an attending physician's statement, and another review of his file was conducted.  Defendant upheld the termination of benefits, stating that the "medical information reviewed indicates your original diagnosis is resolved.  Although you may have other disabilities that prevent you from working, we cannot consider those with this claim."  (R. at 40.)

Plaintiff appealed again pursuant to the LTD plan's two-level appeal process.  Defendant employed another IME to conduct

a medical records review.  The IME doctor found that although Plaintiff did sustain injury to his left neck and shoulder area from surgery and radiation, and that Plaintiff was taking Tylenol with Codeine, both possibly causing a problem for Plaintiff to drive, none of Plaintiff's doctors' notes demonstrated a "clear disqualification" from being able to drive.  (R. at 14.)  The IME doctor also found that Plaintiff's diabetes may impair his ability to drive, but his diabetes was separate from his LTD benefits claim and could be accommodated by employers.  (Id.)  Ultimately, the IME doctor stated that although Plaintiff may not be able to perform "DOT driving," he did "not find a preponderance of the evidence" that suggested that Plaintiff's cancer or the treatment for cancer prevented Plaintiff from gainful employment in any occupation.  (Id.)  As a result, Defendant upheld the termination of Plaintiff's benefits.

Plaintiff filed this action against Defendant pursuant to 29 U.S.C. § 1132(a)(1)(b) of the Employee Retirement Security Act (ERISA), claiming that Defendant abused its discretion in wrongfully terminating Plaintiff's LTD benefits.  Defendant has moved for summary judgment on Plaintiff's claim.

## DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and

4

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify

specific facts and affirmative evidence that contradict those offered by the moving party.  <u>Anderson</u>, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).

**B.   Analysis**

Defendant argues that it is entitled to summary judgment because its decision to discontinue Plaintiff's benefits was not arbitrary and capricious.  Plaintiff argues that not only does an issue of material fact remain as to whether the decision to terminate benefits was proper, he also disputes the application of the "arbitrary and capricious" standard.  Instead, Plaintiff argues that a heightened standard of review applies.

**1.   *Whether a heightened standard of review applies***

ERISA provides that a plan participant or beneficiary may bring a suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  ERISA, however, does not specify a standard of review for an action brought under § 1132(a)(1)(B).  <u>See</u> <u>Mitchell v. Eastman Kodak Co.</u>, 113 F.3d 433, 437 (3d Cir. 1997).  The Supreme Court addressed the issue and determined that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless

6

the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

Where the plan affords the administrator discretionary authority, a district court's grant of summary judgment is made under an arbitrary and capricious standard. See Nazay v. Miller, 949 F.2d 1323, 1334 (3d Cir. 1991); Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 119 (3d Cir. 1990). Under this standard of review, an administrator's decision must be affirmed unless it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." Abnathya v. Hoffman-LaRoche, Inc., 2 F.3d 40, 45 (3d Cir. 1993) (quotations and citations omitted). A court is not free to substitute its own judgment for that of the administrator's in determining eligibility for plan benefits. Id. (citations omitted). A heightened standard of review is required, however, when the structure of the ERISA plan presents a conflict of interest. See Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 383 (3d Cir. 2000).

Here, the parties do not dispute that Defendant was the plan sponsor and the plan administrator, and that it had discretionary authority to determine eligibility for benefits or to construe

the terms of the plan.[1]  The parties do dispute, however, whether a heightened standard of review should be applied.

The Third Circuit has held that a heightened standard of review applies when a conflict of interest exists.  See Pinto, 214 F.3d at 390.  Whether a conflict exists depends on the nature of the plan.  In a situation where an insurance company is both plan administrator and funder, a conflict of interest exists because the fund from which monies are paid is the same fund from which the insurance company reaps its profits.  Id. at 378.  As a result, this type of insurance company has "an active incentive to deny close claims to keep costs down" and increase profits.  Id. at 388.

In contrast, where an employer funds and administers a benefits plan, there is no conflict of interest, absent specific, tangible evidence that the structural relationship had tainted the review process.  Id. at 390 (discussing Kotrosits v. GATX Corp. Non-Contributory Pension Plan for Salaried Employees, 970 F.2d 1165, 1173 (3d Cir. 1992)).  This "practice is grounded in the belief that the structural incentives to deny meritorious claims are generally outweighed by the opposing incentives to grant them--such as the 'incentives to avoid the loss of morale

---

[1] Defendant employed Benefit Management Services ("BMS") to act as "plan supervisor" of the LTD plan.  (Def. Ex. B.)  Defendant retained the final authority and responsibility for the plan and its operation.  (Id.)

and higher wage demands that could result from denials of benefits.'"  Id. (quoting Nazay v. Miller, 949 F.2d 1323, 1335 (3d Cir. 1991)).

Here, because Defendant funds and administers the LTD benefits plan, it must be determined whether the review process had been tainted such that a heightened level of scrutiny is required.  Plaintiff argues that Defendant violated its own claims procedures and appeal process, which demonstrates that the review process was tainted, and, therefore, requires the application of a heightened standard of review.  Specifically, Plaintiff contends that Defendant did not "consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment" as required by the LTD plan, and Defendant failed to take "into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination," as also required by the LTD plan. (Pl.'s Br. at 10-11, quoting R. at 41.)

Plaintiff's arguments to support the application of a heightened standard of review are unavailing.  In order for a heightened standard of review to apply, it is not enough to argue that Defendant, as plan administrator, did not properly review Plaintiff's medical records or did not properly interpret and

9

apply the terms of the plan.  This argument is precisely what the arbitrary and capricious standard was designed to address.  See Firestone Tire & Rubber Co., 489 U.S. at 115.

Instead, in order to show that a conflict of interest implicates a heightened standard of review, Plaintiff must present evidence that the way the LTD plan is funded and administered is tainted.  See Pinto, 214 F.3d at 383.  Plaintiff has failed to present such evidence.  As a result, the application of a heightened standard review is not warranted.

### 2. *Whether Defendant's termination of Plaintiff's benefits was arbitrary and capricious*

As briefly stated above, Plaintiff argues that Defendant failed to properly apply two provisions of the LTD plan when it decided to terminate Plaintiff's benefits.  Plaintiff also argues that Defendant's determination that Plaintiff was capable of sedentary work was not supported by substantial evidence.

As plan administrator and plan sponsor, Defendant had discretion in interpreting the terms of the plan and in making determinations of fact.  Luby v. Teamsters Health, Welfare, and Pension Trust Funds, 944 F.2d 1176, 1187 (3d Cir. 1991).  Thus, it must be determined whether Defendant was arbitrary and capricious in applying the two policy provisions at issue, as well as in finding that Plaintiff was no longer totally disabled.

In November 2004, after a review of Plaintiff's medical records, Defendant concluded that although Plaintiff was

receiving treatment for insulin dependant diabetes, orthostatic symptoms, hypertension, and thyroid problems, he was no longer being treated for cancer. Because he was free of cancer, and cancer was the basis for his disability claim, Defendant found him no longer totally disabled, and terminated his benefits. Plaintiff was informed that none of his other medical conditions could be considered with regard to his LTD claim for cancer, and that he would have to submit a separate claim form for those other conditions if he wished to receive benefits for those conditions.

    Plaintiff appealed, two of his doctors submitted statements, and Carolyn Recard, a registered nurse who had been Plaintiff's case file manager, again reviewed the file. She recognized Plaintiff's other conditions, such as shingles and back pain, and suggested that a functional capacity examination be performed to determine his ability to return to work. Recard ultimately concluded, however, that Plaintiff was "unable to return to work due to conditions that are NOT part of his original diagnosis." (R. at 44.)

    Plaintiff appealed that decision, and Defendant employed Al Osbahr, M.D. to perform an independent medical review of Plaintiff's medical records. Dr. Osbar also recognized that Plaintiff sustained impairment to his left neck and shoulder area from the cancer surgery and radiation, and that this impairment,

11

in conjunction with his diabetes and use of Tylenol with Codeine, would prohibit him from performing his former truck driving job, but noted that these considerations were not well-documented in the physician notes. (R. at 14.) Dr. Osbar also noted that Plaintiff's diabetes may impair his ability to drive, but diabetes was separate from his LTD benefits claim, and could be accommodated by employers. (<u>Id.</u>) Ultimately, Dr. Osbar corroborated Nurse Recard's findings, and stated that although Plaintiff may not be able to perform "DOT driving," he did "not find a preponderance of the evidence" that suggested that Plaintiff's cancer or the treatment for cancer prevented Plaintiff from gainful employment in any occupation. (<u>Id.</u>) As a result, Defendant upheld the termination of Plaintiff's benefits.

Plaintiff challenges these findings for three reasons: 1) Nurse Recard and Dr. Osbar were not the proper health care professionals as required by the LTD plan's language; 2) Defendant should have considered Plaintiff's conditions other than cancer when deciding whether to terminate his benefits; and 3) the finding that Plaintiff was capable of sedentary work was not supported by substantial evidence.

       1)    Whether Nurse Recard and Dr. Osbar were the proper health care professionals

ERISA regulations provide that "in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, . . . the appropriate named fiduciary

shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment." 29 C.F.R. § 2560.503-1(h)(3)(iii). The LTD plan's language contains the same provision. (R. at 41.)

Plaintiff argues that Nurse Recard and Dr. Osbahr were not proper health care professionals because Nurse Recard was not experienced in the field of oncology or orotolaryngology, and Dr. Osbahr was not experienced in the field of oncology or orthopedics. Defendant counters that because the decision to terminate Plaintiff's benefits was based on a review of his own doctors' medical records, which Defendant did not challenge, the qualifications of Nurse Recard and Dr. Osbahr, other than their qualifications to review medical records, are not relevant. Defendant further argues that because Plaintiff was seeking to continue his benefits not for cancer, which was cured, but rather for other ailments, Plaintiff's argument that Nurse Recard and Dr. Osbahr should have been experienced in oncology is unsupportable.

As argued by Defendant, Defendant terminated Plaintiff's benefits because his cancer, a condition for which Plaintiff was receiving benefits, had been successfully treated. In making that decision, Defendant extensively reviewed the reports of Plaintiff's treating physician, William Keane, who was experienced in oncology and orotolaryngology. Dr. Keane reported

that Plaintiff was cancer-free, and neither Nurse Recard nor Dr. Osbahr contested that finding.  Thus, it was not Nurse Recard or Dr. Osbahr who made the medical judgment that Plaintiff was cancer free, but rather Plaintiff's own oncologist.

Furthermore, with regard to Plaintiff's other medical conditions, despite the fact that Plaintiff's claim was not based on those other ailments, Defendants did not question the doctors' diagnosis of Plaintiff's diabetes, neck and back pain, and other problems, and, thus, did not make any medical judgment as to those conditions.  Because Defendant did not make a medical judgment with regard to Plaintiff's cancer, which was the basis for his disability claim, or any of his other ailments, it was not required to consult a medical professional with expertise in oncology or orotolaryngology or any other speciality.[2]  See, e.g., Stanford v. Continental Cas. Co., 455 F. Supp. 2d 438, 445 (E.D.N.C. 2006) (finding that the defendant did not violate § 2560.503-1(h)(3)(iii) because "defendant has never questioned the findings of plaintiff's treatment providers," and it was clear "that at all times, defendant's only question has been whether, under the terms of the policy, those findings constitute disability").

---

[2] Plaintiff does not contest that Nurse Recard and Dr. Osbahr were qualified to perform medical records reviews.

14

>    2)   Whether Defendant should have considered Plaintiff's conditions other than cancer when deciding whether to terminate his benefits

ERISA regulations require that in order for a claimant to have a full and fair review, the review must take "into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination."  29 C.F.R. § 2560.503-1(h)(2)(iv).  The LTD plan's language contains the same provision.  (R. at 41.)

Plaintiff contends that because Defendant stated in its termination of benefits letter, "Although you may have other disabilities that prevent you from working, we cannot consider those with this claim" (R. at 40), Defendant violated the above ERISA regulation and LTD plan language.  Plaintiff originally presents this argument in the context of his request for a heightened standard of review, but it is as equally unavailing here in the context of whether Defendant was arbitrary and capricious in making its decision to terminate Plaintiff's benefits.

The regulation cited by Plaintiff refers to all evidence relating to Plaintiff's claim, which is total disability for cancer.  Defendant's statement does not contradict that provision.  Rather, Defendant informed Plaintiff that if he wished to have his other disabilities considered for a total

15

disability claim, he would have to submit those separately.

Further, Defendant's statement does not indicate that it refused to consider any of Plaintiff's medical records or physicians' statements as they related to Plaintiff's disability claim for cancer.  The record reveals that Defendant's review of Plaintiff's appeal did consider all documents and evidence Plaintiff submitted with his appeal, and that evidence referenced his other health conditions.  Thus, because Defendant did consider all of Plaintiff's proffered evidence, which related to his cancer claim as well as to his other conditions, Plaintiff's argument that Defendant violated § 2560.503-1(h)(2)(iv) and the terms of the plan is without merit.

> 3)   Whether Defendant's finding that Plaintiff was not totally disabled was arbitrary and capricious

In order to continue receiving benefits past the first twenty-four months of his disability, Plaintiff must have been considered totally disabled from performing any gainful employment.  Plaintiff argues that Defendant's determination that he was no longer totally disabled was not supported by substantial evidence.  Defendant counters that substantial evidence supports its decision.

In addition to all of Plaintiff's medical records on file since his initial disability application in 1995, Defendant considered the attending physician statements provided by Dr. Keane, as well as by Dr. Soifer, Plaintiff's treating physician

16

for diabetes.  Defendant noted that the physician statements were incongruous because certain check boxes were checked indicating Plaintiff's inability to work, but other boxes relating to the same issue were left unchecked.  (See R. at 84-94.)  Defendant also noted that while some of the statements indicated that Plaintiff was totally disabled, they did not explicitly state what conditions caused Plaintiff to be totally disabled, and they did not indicate, when asked, what specifically limited Plaintiff's ability to work.  (See, e.g., R. at 54.)

Ultimately, however, Defendant recognized that Dr. Keane was Plaintiff's treating physician for cancer, which had not recurred since its diagnosis nine years before.  Further, Defendant considered that Dr. Soifer treated Plaintiff for diabetes, a condition for which Plaintiff had not made a long term disability claim.[3]  Even though in 2000 Defendant's IME revealed that Plaintiff was still totally disabled, in the years that followed, Defendant's review of the medical records revealed that any inability of Plaintiff to work was not due to his original disability claim for cancer.  As a result, Defendant determined that Plaintiff was not totally disabled because of his cancer and

---

[3]Defendant points out that the medical records do not indicate that Plaintiff had diabetes until Dr. Soifer submitted a report in 2003.  Because Plaintiff stopped working for Defendant in 1995, it appears that Plaintiff would not be eligible for LTD benefits for that condition.

17

terminated Plaintiff's disability benefits.[4]  See, e.g., Stanford v. Continental Cas. Co., 455 F. Supp. 2d 438, 445 (E.D.N.C. 2006) (holding that the plaintiff failed "to recognize that this is not a case involving an administrator's denial of disability benefits by discrediting or ignoring the findings of the claimant's treating physicians," but rather the claims specialist "reviewed all of the medical information that was before the administrator and came to the objective conclusion that Plaintiff was not disabled").

The review of the entire record demonstrates that Plaintiff has failed to meet his burden to prove that Defendant's decision to terminate his benefits was made without reason, unsupported by substantial evidence, or erroneous as a matter of law.  Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997) (holding that to determine whether a plaintiff has met his burden of establishing that a defendant's decision to deny benefits was

---

[4] A plan administrator does not always have to specifically demonstrate the jobs a claimant is capable of performing when making the determination as to whether the claimant is totally disabled from any gainful employment.  See Havens v. Continental Cas. Co., 186 Fed. Appx. 207, 213 (3d Cir. 2006) ("The absence of a specific determination of a claimant's capacity or a proposed occupation's requirements need not always be problematic."). Here, because Defendant found that Plaintiff's inability to work was not due to the condition for which he was receiving benefits, it was not required to determine what jobs Plaintiff could perform.  If Defendant had been required to do so, it would have had to consider the other medical conditions Plaintiff suffers from that are not the basis of his disability claim, which is an untenable result.

arbitrary and capricious, a court must look at the record as a whole).  Consequently, because the Court cannot substitute its judgment for that of Defendant, and Plaintiff has failed to demonstrate that Defendant's decision to terminate his benefits was arbitrary and capricious, Defendant is entitled to summary judgment.  An appropriate Order will be entered.

Dated: June 22, 2007                    s/ Noel L. Hillman

At Camden, New Jersey                   NOEL L. HILLMAN, U.S.D.J.